807 So.2d 1129 (2002)
STATE of Louisiana
v.
Edward M. RICHARD.
No. 01-KA-952.
Court of Appeal of Louisiana, Fifth Circuit.
January 29, 2002.
*1130 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Thomas J. Butler, Kia M. Habisreitinger, Assistant District Attorneys, Gretna, LA, Counsel for State.
Holli Herrle-Castillo, Marrero, LA, Counsel for appellant.
Court composed of Judges SOL GOTHARD, MARION F. EDWARDS and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
In this matter, we affirm Defendant's conviction for attempted manslaughter and the sentence imposed following the conviction.

STATEMENT OF THE CASE
On May 30, 2000, the Jefferson Parish District Attorney filed a bill of information charging Defendant, Edward M. Richard, with attempted second degree murder of Pamela Richard, a violation of LSA-R.S. 14:27 and 14:30.1. Defendant was arraigned on May 31, 2000 and pled not guilty. On September 11, 2000, Defendant waived trial by jury, and the case was tried before the judge who found defendant guilty of the lesser included offense of attempted manslaughter. The trial court sentenced Defendant on September 14, 2000, to imprisonment at hard labor for ten years. Defense counsel filed a motion to withdraw as counsel of record on October 4, 2000. On November 14, 2000, Defendant's pro se motion for appeal was granted by the trial judge.

FACTS
Pamela Richard, who was called as a witness by the State, testified that on April 28, 2000, when she came home from work, her husband, Defendant, Edward Richard, was in the back yard sitting on a bench near the shed. She walked to the back door, stuck her head out, and told Defendant that she was bringing her children (from a previous marriage) somewhere and *1131 would be right back. When she returned home, Defendant came back inside the house and lay on the floor. They got into an argument about money and her son, Justin; Defendant was angry and shouting. Defendant got up and went outside; Mrs. Richard prepared something to eat and sat down on the sofa. While she was watching television, Defendant came back inside, and they began arguing again. During the argument, Defendant threw water and potato chips at Mrs. Richard and cursed at her. Mrs. Richard cursed Defendant, who walked back outside to the shed. About fifteen minutes later, Defendant came back inside, went into the kitchen, and started arguing again with Mrs. Richard. Defendant and Mrs. Richard called each other "names." Defendant walked over and punched Mrs. Richard in her face.
Mrs. Richard reviewed photographs of herself at trial, State's exhibits 1-A and 1-B, and stated that the injuries to her face shown in the photographs were caused by Defendant. Mrs. Richard next remembers that she was on the sofa and Defendant was in the kitchen. She testified that he was digging in his pocket and had a "weird" look on his face. Defendant came back around the counter, stood five feet away from her, pointed a gun at her and started trying to shoot it. Mrs. Richard identified the gun, State's exhibit 2, as the gun Defendant used to (try to) shoot her. Defendant pulled the trigger about ten times. Mrs. Richard heard only a clicking noise. Mrs. Richard, who was screaming, jumped up, put a pillow in front of her face and said, "Are you trying to kill me?" She grabbed the telephone, dialed 911, and ran to the backyard. Defendant chased her. Mrs. Richard told the 911 operator that her husband was trying to kill her. The 911 tape was played at trial. When the deputies arrived, she gave them permission to search the shed in the backyard.
Mrs. Richard also testified that, in 1998, she and Defendant were arguing in their bedroom. Defendant went outside and took something out of her car to prevent her from leaving. She got angry and said she was going to call her family. Defendant took the gun out of the top of the closet in the bedroom and said, "Come on, I have something for them." He was angry and screaming. Mrs. Richard ran into the bathroom. She testified that, on another occasion in 2000, Defendant started cursing at her and using foul language. She told him to "shut up" and threw her shoe at him, but missed. Defendant walked up behind Mrs. Richard and choked her, leaving marks and a bruise on her neck. Mrs. Richard testified that her daughter, Callie, was at home during the altercations in 1998 and 2000.
Deputy Randall Fernandez, who was called as a witness by the State, testified that on April 28, 2000, he responded to a complaint from a woman who said that her husband was chasing her around with a gun and trying to kill her. When he arrived, he approached Defendant, who fit the physical description he had been given and who was sitting on a bench in front of the house. Deputy Fernandez conducted a pat-down search for weapons for his safety. He advised Defendant of his rights, and Defendant gave a statement, saying, "What's the big deal? I was only trying to scare her." Deputy Fernandez asked him where the gun was, and Defendant told him he had concealed it in the water cooler in the back shed.
When Deputy Fernandez retrieved the gun, he saw that it was jammed. The slide was back, there was a round in the chamber, and there was another round directly behind the chamber with the tip of the second bullet touching the primer on the bullet that was in the chamber. He explained that this was known as a doublefeed *1132 jam. Deputy Fernandez testified that he cleared the weapon to make it safe. He identified State's exhibit 2 as the gun he recovered from the water cooler and State's exhibit 2 B as a box of ammunition that had been lying directly under the gun in the water cooler. Fernandez stated that Mrs. Richard was visibly shaken and upset when he first arrived at the scene, and that there was some redness and swelling on her face.
Louise Walzer, who was called as a witness by the State, was qualified as an expert in forensic firearms examination. She testified that she received State's exhibit 2 and 2 B to examine. Ms. Walzer concluded that the weapon had several malfunctions that caused it to jam in two different ways. Using diagrams, she explained the correct and incorrect ways that a weapon worked and the reasons why the weapon jammed. Ms. Walzer also stated that, during her examination she had been able to fire the gun.
Callie Zaffuto, who was called as a witness by the State, testified that her mother was Pamela Richard. She stated that, before her mother and Defendant were married, Defendant was good to her mother, but that after they were married, her mother and Defendant always argued, often about her and her brother. Miss Zaffuto testified that on one occasion Defendant and her mother were arguing and screaming in the bedroom. She heard her mother scream her name, so she tried to open the door but it was jammed. Miss Zaffuto ran into the door to get it to open. When she opened the door, she saw Defendant standing there with a gun in his hand. Miss Zaffuto told him to stop and that she was going to call her family. Defendant said, "Well I'll shoot them too." On another occasion, in January 2000, Miss Zaffuto was eating in the kitchen when her mother and Defendant started fighting. Defendant told Miss Zaffuto to go to her room. While Miss Zaffuto was in her room, she heard her mother screaming her name. Zaffuto ran to her mother and saw finger marks on her neck.
The defense did not call any witnesses.

ASSIGNMENT OF ERROR NUMBER ONE
As his first assignment of error, Defendant argues that the ten-year sentence imposed by the trial court is constitutionally excessive. He claims that, although the trial court articulated reasons for the sentence and complied with LSA-C.Cr.P. art. 894.1 on its face, the trial court did not give adequate consideration to the mitigating factors. Specifically, Defendant contends that the trial judge failed to give adequate weight to the following facts: he had no prior convictions or arrests; he was provoked by the victim; he only pointed the gun at the victim to scare her; the victim was not harmed; he was a hard-working man who financially supported his wife and her two problem children from a prior union; he cooperated with the officers when they arrived at the scene; there was nothing in the record for the trial court to conclude that Defendant would likely commit another crime, especially since it was likely that the couple would have split, and without Mrs. Richard's nagging about their financial problems and the added stress of her two children, there would have been no further aggressive action by Defendant. The State responds that the trial judge considered both the mitigating and aggravating circumstances prior to imposing sentence, the sentence was within the penalty range set by the Legislature, and the sentence was not constitutionally excessive because it was not grossly disproportionate to the harm caused to the community by domestic violence.
*1133 We first note that Defendant failed to file a motion to reconsider sentence under LSA-C.Cr.P. art. 881.1; he also failed to make an oral objection at the time of sentencing. Such an omission by the defense generally precludes review of the statutory correctness of a sentence on appeal. See State v. Ewens, 98-1096 (La. App. 5 Cir. 3/30/99), 735 So.2d 89, 96. Therefore, Defendant is not entitled to review of his claim of statutory excessiveness; our review is limited to a bare review of the sentence for constitutional excessiveness. State v. Hester, 99-426 (La. App. 5 Cir. 9/28/99), 746 So.2d 95, 103, writ denied, 99-3217 (La.4/20/00), 760 So.2d 342.
The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Munoz, 575 So.2d 848, 851 (La.App. 5 Cir.1991). The trial judge has wide discretion in imposing sentences within the statutory limits, and sentences will not be set aside absent manifest abuse of that broad discretion. State v. Lanclos, 419 So.2d 475, 478 (La.1982); State v. Rainey, 98-436 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097, 1106. Three factors should be considered in reviewing a judge's sentencing discretion: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts. State v. Le, 98-1274 (La.App.6/30/99), 738 So.2d 168, 171, writ denied, 00-2174 (La.4/12/01), 789 So.2d 587; State v. Medious, 98-419 (La.App. 5 Cir. 11/25/98), 722 So.2d 1086, 1092. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2 Cir. 3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
In the instant case, Defendant was convicted of attempted manslaughter, a violation of LSA-R.S. 14:27 and 14:31. The penalty provision for a violation of LSA-R.S. 14:31, manslaughter, is as follows: Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. LSA-R.S. 14:27 D provides, in pertinent part, the penalty provision for attempt: Whoever attempts to commit any crime shall be punished as follows: in all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted or both.
After the trial judge found Defendant guilty of attempted manslaughter, Defendant waived all sentencing delays. However, the trial judge stated that he did not intend to sentence Defendant that afternoon because he wanted to consider the appropriate sentence. Prior to sentencing, the trial judge discussed the facts of the case and the evidence introduced at trial. He noted that Article 894.1 of the Code of Criminal Procedure stated that, when a defendant had been convicted of a felony, the court should impose a sentence of imprisonment if there was an undue risk that during the period of a suspended sentence or probation the defendant would commit another crime. The judge stated that it believed that applied in the instant case. Secondly, the court found that the defendant was in need of correctional treatment or a custodial environment that could be provided most effectively by his commitment to an institution. Third, the court noted that a lesser sentence would deprecate the seriousness of the Defendant's crime. The trial judge stated that the *1134 offender's conduct during the commission of the offense manifested deliberate cruelty to the victim and that Defendant endangered a life by using a firearm. However, the court also noted that Defendant acted under strong provocation, and that he had no criminal history of prior delinquency or criminal activity and had led a law-abiding life for a substantial period of time before the commission of the instant crime. The court stated that imprisonment of the Defendant would entail excessive hardship to him and his dependents, but no more than in any other case. After discussing his reasons for sentencing, the trial judge sentenced Defendant to imprisonment at hard labor for ten years.
A review of the record shows that the trial judge clearly gave a great deal of thought and consideration prior to sentencing Defendant. He considered the facts of the case, the mitigating and aggravating circumstances, and the nature and the background of the Defendant before imposing sentence.
In State v. Hidalgo, 95-319 (La.App. 5 Cir. 1/17/96), 668 So.2d 1188, the defendant was convicted of one count of manslaughter and two counts of attempted manslaughter. Defendant contended that his fifteen-year sentence on the manslaughter conviction and seven and one-half years on each attempted manslaughter conviction were excessive. The court found that the concurrent sentences were not constitutionally excessive and stated that, by producing a gun and firing at several individuals, the defendant created a risk of death or great bodily harm to more than one person, and in fact killed one person and injured two others. Id. at 1201.
In State v. Hutcherson, 34,540 (La.App. 2 Cir. 4/4/01), 785 So.2d 140, the defendant was convicted of attempted manslaughter based on injuries to his infant daughter and was sentenced to fifteen years at hard labor. The court found that the sentence was not constitutionally excessive, noting that the medical evidence was clear that numerous, severe injuries were inflicted upon the child by defendant who used deliberate cruelty and considerable violence, and that the child was alive only because of heroic efforts of her doctors. State v. Hutcherson, 785 So.2d at 141.
In State v. Dubroc, 99-730 (La.App. 3 Cir. 12/15/99), 755 So.2d 297, the defendant was convicted of attempted manslaughter and aggravated battery and was sentenced to twelve years for attempted manslaughter and three years for aggravated battery to be served consecutively. The court held that the sentence was not constitutionally excessive, even though the forty-five-year-old defendant had no criminal history, was married, was a father and grandfather, and had always been gainfully employed. The court found that the crimes caused serious, life-threatening injuries with permanent disfigurement and disabilities for one victim, who faced more reconstructive surgeries, had lost one eye and had a shotgun pellet lodged in her other eye, and that defendant could have received a maximum sentence of thirty years.
In State v. Alexander, 550 So.2d 207 (La.App. 4 Cir.1989), the defendant was convicted of attempted manslaughter and sentenced to ten years of imprisonment at hard labor. The court found that the sentence was not constitutionally excessive, considering that defendant shot the victim five times as the victim fled, and that the victim sustained three wounds to the back and two wounds to the back of the head.
In the instant case, although the testimony indicates that the victim's husband tried to kill her, she was not injured, unlike all of the victims in the above-cited cases. In addition, Defendant had no criminal history and had been strongly provoked before the attack. However, having *1135 considered these factors, we cannot say that the sentence imposed was constitutionally excessive. The only reason the victim was not shot, and possibly killed, was that the gun jammed. The evidence shows that Defendant had attacked his wife on two previous occasions, once with a gun and once by choking her. These actions indicate that Defendant is a violent man. Further, Defendant was sentenced to ten years of imprisonment, which was one-half of the twenty-year sentence he could have received.
The ten-year sentence is not constitutionally excessive. It is not grossly disproportionate to the offense nor does it impose needless and purposeless pain and suffering. While we have given this assignment of error serious consideration, we find it unavailing, and we therefore affirm Defendant's sentence.

ASSIGNMENT OF ERROR NUMBER TWO
As his second assignment of error, Defendant argues that the trial judge erred in allowing inadmissible other crimes evidence to be presented at trial. Specifically, he contends that the trial court erred in allowing Mrs. Richard and her daughter to testify about two prior alleged offenses committed by Defendant against Mrs. Richard. During the first incident, which occurred in November of 1999, Defendant attempted to kill his wife with a gun. During the second incident, which occurred in January of 2000, Defendant attempted to kill his wife by strangling her at their home. He claims that there was not sufficient evidence that the prior acts occurred, and that the modus operandi was not so distinctive as to be probative to the instant offense. Defendant also argues that the trial court erred in admitting this evidence because the State failed to comply with the procedural requirements of written notice within a reasonable time before trial and a hearing as mandated by State v. Prieur, 277 So.2d 126 (La.1973). The State responds that the evidence was properly admitted and, in the alternative, argues that if the evidence was improperly admitted, any error was harmless.
In State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960, the Louisiana Supreme Court set out the applicable law pertaining to the admissibility of other acts evidence as follows. Article 404(B) of the Louisiana Code of Evidence provides the basic rule regarding the use of evidence of "other crimes, wrongs or acts" at trial. It states in pertinent part:
Except as provided in Article 412[regarding a victim's past sexual behavior in sexual assault cases], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.
Several other statutory and jurisprudential rules also play a role in determining the admissibility of such evidence. First, one of the factors listed in Article 404(B) "must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible." State v. Jackson, 625 So.2d 146, 149 (La.1993). Second, the state is required to prove the defendant committed these other acts by clear and convincing evidence. Id.; State v. Davis, 449 So.2d 466 (La.1984). Third, even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. Finally, the requirements set forth in State v. Prieur, 277 So.2d 126 *1136 (La.1973) must be met. Thereunder, the state must, within a reasonable time before trial, provide written notice of its intent to use other acts or crimes evidence and describe these acts in sufficient detail. The state must show the evidence is neither repetitive nor cumulative, and is not being introduced to show the defendant is of bad character. State v. Miller, 718 So.2d at 962. A trial court's ruling on the admissibility of evidence pursuant to LSA C.E. art. 404 B(1) will not be disturbed absent an abuse of discretion. State v. Stepp, 28,868 (La.App. 2 Cir. 12/11/96), 686 So.2d 76, 79.
In the instant case, the first issue is whether the trial court erred in allowing the State to introduce other acts evidence without reasonable notice to Defendant and a pre-trial Prieur hearing. The State filed a notice of intent to use evidence of other crimes on September 11, 2000, the day of trial. In its brief, the State claims that, pursuant to an agreement between the parties, the hearing on the notice of intent was held during the bench trial, as evidenced by the following:
MS. HABISREITINGER: [The State]
Now, Ms. Richard, that was not the first time that Edward Richard pulled a gun on you; was it?
MR. GILLEN: [Defense counsel]
I'm going to object, Your Honor. That's not part of this case.
MS. HABISREITINGER:
Judge, my understanding was that we had a 404 B motion filed, and we agreed to hear it during the course of the trial.
THE COURT:
It is correct that an agreement was made to hear this during the trial; right?
MR. GILLEN:
She handed me the motion, Your Honor, and that was it. She handed me the motion before. We made an agreement that we were going to try the motion to suppress. There was no agreement on the motionany other motions.
MS. HABISREITINGER:
Judge, that was brought up at the Bench with you at about 1:30.
MR. GILLEN:
Can we approach the Bench a minute, Judge?
[PRIVATE BENCH CONFERENCE]
THE COURT:
For the record, the Defense objection is overruled.
Therefore, the record is somewhat unclear regarding the notice of intent and the Prieur hearing. However, it is clear that the trial judge overruled Defendant's objection to the other acts evidence and admitted it. At another point during trial, when the State was questioning Callie Zaffuto, the following exchange occurred:
MS. HABISREITINGER:
Do you recall an incident where you saw Edward Richard with a gun?
MISS ZAFFUTO:
Yes.
MS. HABISREITINGER:
Tell us about that.
MR. GILLEN:
I'm going to object, Your Honor, to this line of questioning. I don't believe it's relevant in this case.
MS. HABISREITINGER:
Judge, this witness was actually there when Mr. Edward Richard
THE COURT:
Is this evidence leading to the events of April 28th of 2000?
MS. HABISREITINGER:
No, it would be 404(B) evidence.
THE COURT:
These are prior events?

*1137 MS. HABISREITINGER:
404(B), Prieur hearing that we're having.
THE COURT:
I earlier admitted this evidence, but you maintain your objection, Mr. Gillen?
MR. GILLEN:
Yes, Your Honor, from the beginning.
MS. HABISRIETINGER:
Judge, the State only has a few questions about these two events.
MR. GILLEN:
Well, I'm still going to object.
THE COURT:
Well, we're not trying the prior incidents. And the dates of those prior incidents, again, according to your motion?
MS. HABISRIETINGER:
January 2000 would be the strangling incident. The other one, I believe, was October '98, would be the other gun incident.
THE COURT:
Consistent with my earlier ruling, I overrule the Defense objection.
Based on the foregoing, Defendant did not receive reasonable notice of the State's intent to use other acts evidence since the notice was filed on the morning of trial. Moreover, we question whether the Prieur hearing was adequate. Based on these facts alone, therefore without considering the sufficiency of evidence or the possibility of prejudiceit was error for the trial judge to have allowed the introduction of this evidence. However, the error does not mandate reversal of the conviction here.
Not every violation of pre-trial procedures, including Prieur violations, requires reversal. Before a defendant can complain of such a violation, he must show prejudice. State v. Pardon, 97-248 (La.App. 5 Cir. 10/15/97), 703 So.2d 50, 57. Here, we may assume prejudice resulting from the late notice of intent filed by the State, since Defendant did not have time before trial to prepare a defense to the other acts allegations, and the record does not otherwise indicate that Defendant had notice before trial that the State intended to introduce evidence of other acts. Further, there was never any clear indication in the record that the Prieur hearing was being conducted during trial.
However, as noted, an improper reference to other acts evidence is subject to the harmless error rule. State v. Battie, 98-1296 (La.App. 5 Cir. 5/19/99), 735 So.2d 844, 852 (citing State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 101-102). The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error. Id. In the instant case, Mrs. Richard testified that her husband pulled out a gun and tried to shoot her numerous times during an argument in their home, but that the gun jammed and she heard only clicking noises. She stated that she ran away from her husband, but that he followed her and continued trying to shoot her. Deputy Fernandez testified that when he arrived on the scene, Defendant stated that he was only trying to scare his wife, and he told Fernandez where he had put the gun. Louise Walzer testified that she examined the gun, and that it jammed in two different ways. Based on the foregoing, the guilty verdict was not attributable to the other acts evidence, but is amply supported by the other testimony and evidence.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE
As his final assignment of error, Defendant requests, pursuant to La.C.Cr.P. art. 920, a review of the record for errors *1138 patent: any error discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
We have conducted such a review, according to LSA C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990). We find no errors that require consideration or correction.
Therefore, for the above reasons, we affirm Defendant conviction and sentence.

AFFIRMED.