877 So.2d 1079 (2004)
STATE of Louisiana
v.
Jackie C. MERRITT, II.
No. 04-KA-204.
Court of Appeal of Louisiana, Fifth Circuit.
June 29, 2004.
*1080 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Thomas S. Block, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and MARION F. EDWARDS.
SOL GOTHARD, Judge.
Defendant was charged with simple burglary of an inhabited dwelling (count one) in violation of LSA-R.S. 14:62.2, possession of cocaine (count two) and attempt to disarm a police officer in violation of LSA-R.S. 14:27; 14:34.6 (amended count three). After trial on the merits, he was convicted of counts one and three, and found not guilty of count two. The trial court sentenced defendant to imprisonment at hard labor for twelve years on count one with the first year of the sentence to be served without benefit of parole, probation, or suspension of sentence, and imprisonment at hard labor for two years and six months on count three, and with the sentences to run consecutively. Pursuant to a multiple bill, defendant was found to be a second offender. The trial court vacated the original sentence on count one and resentenced defendant under the multiple bill statute to imprisonment at hard labor for 14 years to run consecutively to the previous sentence on count three of two years and six months. The trial court further ordered the sentence to run concurrently with a prior conviction and sentence in Plaquemines Parish. Defendant now appeals.

FACTS
On October 3, 2002 at approximately 1:20 a.m. during Hurricane Lily, a man went into Thelma Kemp's home while Ms. Kemp was lying in her recliner, took her purse containing approximately $600 in cash, and walked out the back door. Ms. Kemp testified that she was eighty-six years old and lived at 1406 Severn Avenue *1081 in Metairie. She did not see the man's face, only the back of him.
Police officers were called to the scene, and the officers set up a perimeter near Ms. Kemp's home in order to locate the perpetrator. Deputy Ryan Weaver testified that there were strong winds and hard rain that night, and that he could not remember seeing any civilians outside in that area. While monitoring his radio, Deputy Ryan Weaver learned that officers were chasing a subject who fit the description of the perpetrator, later identified as defendant, and that the subject had crossed Severn Avenue and was jumping backyard fences. Deputy Weaver relocated to that area and went into the backyard of 3400 43rd Street. A white male fitting the description given over the radio jumped over the fence into the yard. Deputy Weaver, who was in uniform, drew his weapon, identified himself as a sheriff's officer, said "Let me see your hands," and approached defendant in order to handcuff him. While Deputy Weaver was attempting to apprehend defendant, defendant attempted to take the deputy's gun, so he shot defendant in the front of his leg. Approximately thirty minutes elapsed between the time Ms. Kemp reported the burglary and the time when defendant was apprehended.
The purse and its contents were ultimately recovered in the area surrounding Ms. Kemp's home. At the hospital, a small straw containing cocaine powder was found in defendant's pocket. The State also introduced evidence to show that defendant had previously burglarized another home because he needed money to buy drugs.
Defendant testified at trial that he was twenty-three years old, approximately 5'10" tall, and weighed 180 pounds. He acknowledged that he moved to his brother's apartment in Metairie one month prior to the burglary at Ms. Kemp's home to get away from his drug problem.
Defendant testified that, on October 3, 2002, he, his brother, and some other individuals were drinking at his brother's apartment. When defendant and one of the individuals got into an argument, defendant got upset, and left the apartment in a truck his mother had loaned him. Defendant subsequently got out of the truck because he was intoxicated, it was raining so hard he could barely see, and he felt like he might cause an accident. Defendant did not know which direction his brother's apartment was in, so he started walking in the direction that he thought was correct. As he did so, he spotted the police.
Defendant testified that he ran from the police because he had traffic attachments and had been drinking, which violated his probation, and he did not want to be arrested and taken to jail. Defendant explained that he got lost when he started running and admitted cutting through backyards and jumping fences. He stated that the police chased him until he jumped over the fence where Deputy Weaver was. He claimed that he did not remember Deputy Weaver hollering verbal commands.
Defendant denied charging Deputy Weaver and trying to take his gun away from him or trying to fight with him. Defendant explained that he "blacked out," heard a gunshot and fell. When he looked back, he saw the officer behind him. Defendant testified that, when he heard the gunshot, he "woke up." He maintained that Deputy Weaver shot him from behind, and that the wound on the back of his leg was much smaller than the wound on the front. Defendant denied going into Ms. Kemp's home and taking her purse or being in possession of a straw containing cocaine that night.
*1082 On cross-examination, defendant admitted that he had been convicted of six felonies: burglary of the Lee's house, attempted burglary of an inhabited dwelling, three convictions for burglary of vehicles, and simple criminal damage to property over $500. Defendant claimed that the State's witnesses lied regarding the occurrences of the night in question in order to get a conviction to cover up the shooting. He testified that he spoke to his mother on the night of the storm and told her that he needed some money, but that she told him she could not give him any money because she was evacuating.
At the trial, Deputy Weaver testified that he did not smell any alcohol on defendant's breath, and that defendant did not appear intoxicated. Detective Norman Schultz, who went to the hospital, testified that he did not smell any alcohol on defendant's breath and that defendant did not appear to be under the influence of alcohol.
In his first allegation of error, defendant argues that the trial court erred by denying the motion to suppress his statement because the investigating officer dishonored defendant's request for an attorney and suggested to him that, with or without an attorney, he was not free to remain silent, which violated his Sixth Amendment right to counsel.
The State responds that defendant is precluded on appeal from raising this issue because it was not raised in the trial court. Alternatively, the State contends that defendant waived his constitutional rights, including the right to an attorney, and that his statement was freely, knowingly, and voluntarily given.
Generally, to preserve an issue for appeal, a party need not enter a contemporaneous objection to the court's ruling on a written motion. LSA-C.Cr.P. art. 841(B). However, where a defendant initially files a pre-trial motion objecting to the introduction of certain evidence, if at trial he specifically agrees to the introduction, he has waived his prior objection and loses the right to present the issue on appeal. State v. Dillon, 93-707 (La.App. 5 Cir. 1/24/94), 631 So.2d 1171.
Accordingly, in this case where the defendant first noted his objection to the admissibility of the statement by his written motion and his objection to the trial judge's ruling on the motion, but thereafter stated that he had no objection to its introduction at trial, he waived any right to raise issues on appeal concerning the admissibility of the challenged statement.
Additionally, defendant did not argue either in his motion to suppress or at the suppression hearing that the officer violated his right to counsel. He raises this issue for the first time on appeal. Defendant is limited on appeal to the grounds articulated at trial. A new basis, even if meritorious, cannot be raised for the first time on appeal. State v. Gaal, 01-376 (La.App. 5 Cir. 10/17/01), 800 So.2d 938, writ denied, 02-2335 (La.10/3/03), 855 So.2d 294; State v. Richardson, 00-1551 (La.App. 5 Cir. 8/28/01), 795 So.2d 477, writ denied, 01-2670 (La.8/30/02), 823 So.2d 939.
Assuming arguendo that we were to consider the merits of defendant's allegation, any failure to suppress the statement would not be reversible error. The erroneous admission of a confession or a statement is a trial error which is subject to harmless error analysis. State v. Koon, 96-1208 (La.5/20/97), 704 So.2d 756, cert. denied, 522 U.S. 1001, 118 S.Ct. 570, 139 L.Ed.2d 410 (1997); State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212, 1217, citing Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).
An error is harmless if it does not affect substantial rights of an accused. LSA-C.Cr.P. art. 921. Such errors are harmless *1083 if a guilty verdict was surely unattributable to the error. State v.Code, 627 So.2d 1373, 1384 (La.1993), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994); State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 78, writ denied, 98-264 (La.6/19/98), 719 So.2d 481 (citations omitted).
In the instant case, the State introduced overwhelming evidence establishing defendant's guilt. The evidence shows that, at approximately 1:20 a.m., a white male wearing a light-colored T-shirt and light-colored pants entered Ms. Kemp's home, took her purse, and walked out the back door. Approximately thirty minutes later, officers found a subject fitting the description of the perpetrator near Ms. Kemp's home. That subject, later identified as defendant, ran away from police through backyards and over fences. Although he claimed that he ran because he was intoxicated and did not want to risk a probation violation, the officers testified that they did not smell alcohol on defendant's breath, and that defendant did not appear to be intoxicated.
The $600 in $20 bills was found in the area where defendant was apprehended. Defendant's truck was found one block from Ms. Kemp's home. No other civilians were seen outside during the search and apprehension of defendant, because of the strong winds and rain from Hurricane Lily.
Additionally, defendant did not admit in his statement that he committed any of the offenses with which he was charged. Defendant's statement was inculpatory only in that it placed defendant in the area of where the burglary and attempt to disarm a police officer were committed. Further, the statement was virtually identical to defendant's trial testimony.
In light of the foregoing, we find that any error in the admission of defendant's statement was harmless because the evidence against defendant was overwhelming, and because the statement, which was inculpatory, only in that it placed defendant in the area where the crimes were committed, did not significantly contribute to the verdict. State v. Onezime, 01-1018 (La.App. 5 Cir. 2/26/02), 811 So.2d 1033, writ denied, 02-1099 (La.3/21/03), 840 So.2d 535.
We find no merit to this allegation of error.
In his second allegation of error, defendant argues that the evidence was legally insufficient to support the verdict of guilty of attempting to disarm a police officer. He contends that there was no evidence that he touched or reached for the weapon, and no evidence that he was aware that a weapon was drawn on him. He claims that the State proved only that he resisted the arrest of an armed police officer. The State responds that the evidence was sufficient to support the conviction.
The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
LSA-R.S. 14:34.6 defines the offense of disarming of a police officer as follows:
A. (1) Disarming of a peace officer is committed when an offender, through use of force or threat of force, and without the consent of the peace officer, takes possession of a firearm from the person of a peace officer or from an area within the peace officer's immediate control, when the offender has reasonable grounds to believe that the victim is a peace officer acting in the performance of his duty.
*1084 LSA-R.S. 14:27 defines attempt as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. (1) Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
....
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
In the present case, Deputy Weaver testified that, when he observed defendant jump over the fence into the backyard, he drew his weapon, identified himself as a sheriff's officer, and asked to see defendant's hands. At the time, the deputy was in uniform. Defendant not only failed to comply with the deputy's commands, he began running at Deputy Weaver. Deputy Weaver explained that, during the ensuing struggle, he fired one round at defendant, because defendant's hands were out, and because defendant was moving aggressively toward him, lunging at him, and going for his gun.
We find that the evidence was sufficient to show that defendant attempted to disarm the deputy.
In his third allegation of error, defendant argues that the trial court erred in admitting evidence of the Plaquemines Parish burglary. He contends that evidence of the other crime was not relevant to show knowledge, guilty knowledge, intent, or motive because these were not avenues of defense. He further contends that evidence of the other crime did not show system, because each crime was dissimilar. Defendant asserts that the only purpose of the other crimes evidence was to show that he was a person of bad character. Defendant does not appear to challenge the admission of the prior conviction itself, since he admitted to it during his testimony. Rather, it appears that defendant is challenging the admissibility of the details of the prior conviction, particularly his admission after the Plaquemines Parish burglary that he committed the crime to obtain money to buy drugs. Defendant does not contend that the State failed to prove that he committed the other crime. The State responds that the other crime evidence was admissible to prove defendant's motive, intent, and absence of mistake or accident.
At trial, Mr. Lee and Detective Ledet testified regarding the prior burglary. Gilbert Lee, age 64, testified that defendant was good friends with his stepsons and like a son to him. On the night of January 23, 2002, he secured his trailer located in Boothville in Plaquemines Parish and went to bed. When he woke up the next morning, he discovered that his wallet, his money clip containing approximately $200 of his money, and his wife's purse were missing. The wallet and money clip had been on the lavatory, and his wife's purse had been on the vanity. He and his wife found a back window open and a cinder block on the ground; however, when he went to bed the night before, the window was closed. Mr. Lee later *1085 learned that defendant admitted committing the crimes.
Plaquemines Parish Sheriff's Office Detective Jesse Ledet testified that he investigated the burglary of the Lee's home. While he was at the scene, he was informed that defendant wanted to speak to him regarding the burglary. Detective Ledet went to the jail and took a statement from defendant who admitted to the burglary. Defendant told him that he needed money to buy cocaine.
Defendant admitted at trial that he had been convicted of the burglary of the Lee's home.
In State v. Miller, 98-301 (La.9/9/98), 718 So.2d 960, 962, the Louisiana Supreme Court set forth the applicable law pertaining to the admissibility of other crimes evidence as follows (footnote added):
Article 404(B) of the Louisiana Code of Evidence provides the basic rule regarding the use of evidence of "other crimes, wrongs or acts" at trial. It states in pertinent part:
(1) Except as provided in Article 412 [regarding a victim's past sexual behavior in sexual assault cases], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.
Several other statutory and jurisprudential rules also play a role in determining the admissibility of such evidence. First, one of the factors listed in Article 404(B) "must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible." State v. Jackson, 625 So.2d 146, 149 (La.1993). Second, the state is required to prove the defendant committed these other acts by clear and convincing evidence. Id.; State v. Davis, 449 So.2d 466 (La.1984). Third, even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. Finally, the requirements set forth in State v. Prieur, 277 So.2d 126 (La.1973) must be met. Thereunder, the state must, within a reasonable time before trial, provide written notice of its intent to use other acts or crimes evidence and describe these acts in sufficient detail. The state must show the evidence is neither repetitive nor cumulative, and is not being introduced to show the defendant is of bad character. Further, the court must, at the request of the defendant, offer a limiting instruction to the jury at the time the evidence is introduced. The court must also charge the jury at the close of the trial that the other crimes evidence serves a limited purpose and that the defendant cannot be convicted for any crime other than the one charged or any offense responsive to it.
A trial court's ruling on the admissibility of evidence pursuant to LSA-C.E. art. 404(B)(1) will not be disturbed absent an abuse of discretion. State v. Richard, 01-952 (La.App. 5 Cir. 1/29/02), 807 So.2d 1129, 1136.
The record reflects that the State had two main reasons for introducing evidence of the other crime: to prove system or modus operandi, i.e., that both crimes were distinctly similar and, therefore, must have been committed by the same person; and to prove motive, i.e., that defendant took the money in both cases to sustain his cocaine habit.
*1086 Louisiana jurisprudence has long sanctioned the use of other crimes evidence to show modus operandi as it bears on the question of identity when the prior crime is so distinctively similar to the one charged, especially in terms of time, place and manner of commission, that one may reasonably infer that the same person is the perpetrator in both instances. State v. Hills, 99-1750 (La.5/16/00), 761 So.2d 516, 520, 521. However, to assure that modus operandi or system evidence involving crimes similar to the charged offense does not become a means of introducing character and propensity evidence otherwise prohibited by LSA-C.E. art. 404(B), such evidence must be closely analyzed to determine whether it exhibits "`such peculiar modes of operation to distinguish them as the work of one person.'" Hills, 761 So.2d at 521 (quoting State v. Gaines, 340 So.2d 1294, 1297 (La.1976)). Thus, in order to be admissible, "`the modus operandi employed by the defendant in both the charged and uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person.'" Hills, 761 So.2d at 521 (quoting State v. Henry, 436 So.2d 510, 513 (La.1983)) (emphasis as found in the original).
In Hills, the Louisiana Supreme Court delineated the requirements for admissibility of other crimes evidence under the modus operandi or system exception as follows:
(1) there must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith;... (2) the modus operandi employed by the defendant in both the charged and uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person[;] ... (3) the other crimes evidence must be substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character; ... (4) the other crimes evidence must tend to prove a material fact genuinely at issue; ... [and] (5) the probative value of the extraneous crimes evidence must outweigh its prejudicial effect.
Hills, 761 So.2d at 520-521 (emphasis as found in the original; citations omitted).
In the present case, similarities exist between the two burglaries. In both cases, defendant entered the victims' homes at night while the victims were inside, took purses and wallets, and discarded the purses and wallets near the victims' homes. However, there are many distinctions between the two burglaries.
After a close analysis of the respective crimes, we conclude there were no truly distinctive similarities between the Lee burglary and the Kemp burglary. The two crimes are not "so peculiarly distinctive that one must logically say they are the work of the same person." Hills, supra. Thus, since this extraneous other crime evidence failed to show a system or modus operandi that established the identity of defendant as the person who committed the instant offense.
The State also contends that the other crime evidence was introduced to show motive.
In State v. Abercrombie, 375 So.2d 1170, 1175 (La.1979), cert. denied, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980), the Louisiana Supreme Court pointed out the difference between "intent" and "motive":
"While intent and motive are frequently regarded as one and the same thing, there is a clear distinction between them. Motive is the cause or reason that moves the will and induces action for a definite result, while intent is the *1087 purpose to use a particular means to effect such result."...
In State v. Sutfield, 354 So.2d 1334, 1336-37 (La.1978), we recognized that evidence of other crimes may be admissible if the evidence is relevant to show motive, i.e., to show that the defendant had a reason to commit the crime he is charged with....
In State v. McArthur, 97-2918 (La.10/20/98), 719 So.2d 1037, 1041-1042, the Louisiana Supreme Court explained when other crimes evidence is admissible to establish the "motive" of a defendant (citations omitted):
"`Motive' evidence reveals the state of mind or emotion that influenced the defendant to desire the result of the charged crime." ... If ... the other crimes evidence does not tend to show a motive to commit this particular crime against this particular victim, it merely shows a character trait and is inadmissible character evidence.
In Sutfield, supra, the Louisiana Supreme Court concluded that evidence of narcotic addiction was inadmissible to show the motive for armed robbery. It stated in pertinent part (citations omitted):
In order to have independent relevance, the motive established by the other crimes must be more than a general one, such as gaining wealth, which could be the underlying basis for almost any crime; it must be a motive factually peculiar to the victim and the charged crime.... Evidence of drug addiction to show a motive for illegally obtaining funds clearly establishes only a general motive. Even where it is shown that an addicted defendant's wealth and income are not sufficient to maintain his habit, nor more than a general motive to commit any one of many types of crime involving a myriad of potential victims has been shown. Without additional evidence indicating a motive to commit the particular crime involving the particular victim, heroin addiction should not be admitted to prove motive. Its tenuous probative value is far outweighed by its tendency to incite a jury to resolve the issue of guilt or innocence on a defendant's character rather than on proof of the essential elements of the crime....
Sutfield, 354 So.2d at 1337.
In the instant case, the State argued that evidence of the other crime was admissible because the motives for both crimes were the same, i.e., to obtain money to support a drug habit or addiction. In light of the foregoing jurisprudence, it appears that evidence of drug addiction or, by inference, evidence of taking money in the past to support a drug addiction, constitutes a general motive and therefore, is inadmissible at the trial of the instant offense. A review of the record reveals that the other crime evidence did not tend to show a motive to commit this particular crime (burglary of an inhabited dwelling) against this particular victim (Ms. Kemp). The evidence of drug addiction had little, if any, relevance for a purpose other than to show a probability that defendant committed the crime on trial because he was a man of criminal character. Any probative value of this evidence was clearly outweighed by the danger of its prejudicial effect upon the jury. Additionally, evidence of drug addiction was not admissible at trial to prove motive, because motive was not an issue at trial, and it was not an element of the crime charged. Jackson, supra.
We therefore find that the trial court erred in admitting the other crimes evidence. However, an improper reference to other crimes evidence is subject to the harmless error rule. State v. Battie, 98-1296 (La.App. 5 Cir. 5/19/99), 735 So.2d 844, 852, writ denied, 99-1785 (La.11/24/99), 750 So.2d 980 (citing State v. *1088 Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 101-102). The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error. Id.
In this case, the State's other evidence against defendant was overwhelming. Furthermore, a limiting instruction was given to the jury. Accordingly, we find that any error in admitting the particulars of defendant's Plaquemines Parish conviction was harmless.
In his fourth allegation of error, defendant requests a review of the record for errors patent. We have reviewed the record, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find the following.
It is unclear from the record whether defendant was advised of the prescriptive period during the enhanced sentencing. Accordingly, we remand this case and order the trial judge to send written notice to the defendant of the prescriptive period, along with a notice of when the period begins to run, within ten days of the rendering of this opinion, and then to file written proof in the record that the defendant received this notice. State v. Esteen, 01-879 (La.App. 5 Cir. 5/15/02), 821 So.2d 60, 78, writ denied, 02-1540 (La.12/13/02), 831 So.2d 983.
In accordance with the above discussed reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.