BROWN, Chief Judge.
| defendant, Quentin Gandy, was charged by bill of information with unauthorized entry of an inhabited dwelling, a violation of La. R.S. 14:62.3. The charge against defendant stemmed from a July 3, 2009, incident in which defendant entered the home of his former girlfriend,. Shreka *1165 Mayweather, without consent. Defendant, after a two-day jury trial, was found guilty of unauthorized entry of an inhabited dwelling, and, thereafter, was adjudicated a second felony offender. The trial court sentenced defendant to 11 years at hard labor without the possibility of probation or suspension of sentence. Defendant appealed, setting forth three assignments of error. For the reasons stated herein, defendant’s conviction and sentence are affirmed.

Discussion

Sufficiency of the Evidence

In its case in chief, the state presented the testimony of three witnesses. Ms. Mayweather testified that defendant was a former boyfriend and that she had seen him off and on since their relationship ended two and a half years ago. According to Ms. Mayweather, once the relationship ended, defendant “stalked” her and called her constantly; the situation deteriorated to the point where Ms. Mayweather had to ask defendant’s parents to intervene.
Ms. Mayweather claimed that on the day of the offense she was at home watching television with her ten and two-year-olcl sons. According to Ms. Mayweather, defendant was “lurking” around her home, calling her phone, and knocking on her windows demanding her to let him enter. Ms. [2Mayweather stated that she repeatedly asked defendant to leave her property.
Later on that day, Ms. Mayweather received a phone call stating that her new refrigerator would be delivered that day. The appliance arrived while she was bathing. Ms. Mayweather had instructed her ten-year-old son to allow the delivery men, and only the delivery men, to enter the home. According to Ms. Mayweather, defendant entered the house and forced his way into her bathroom as she was taking a bath. Ms. Mayweather stated that she told defendant to leave her house, but he refused to do so. She called the police from the phone near the tub. Shortly before the police arrived, defendant left the scene.
The state also called Shreveport Police Department Corporal Eric Swartout, the officer who responded to Ms. Mayweather’s 911 call. Corporal Swartout received a , statement from Ms. Mayweather that defendant, without consent, entered her home, confronted, her in the bathroom, and refused to leave when asked. Corporal Swartout also spoke with Christopher Hamilton, one of the refrigerator delivery men. Hamilton informed Corporal Swart-out that defendant followed directly behind him into the house and went to the back of Ms. Mayweather’s home where he heard them yelling.
Hamilton testified that, although his memory from that day is not perfect, he did recall that he was delivering a refrigerator to Ms. Mayweather’s home when, at some point, defendant walked into the house and towards the rear of the house. Hamilton stated that when defendant got [3to the back of the house he could hear him and Ms. Mayweather yelling at one another. According to Hamilton, by the tone of the argument it did not appear as if defendant was supposed to be there.
The defense also called three witnesses. The first two witnesses, Gavelyn Bryant, a former friend of Ms. Mayweather, and Otis Oliver, a lifelong friend of defendant, testified regarding Ms. Mayweather’s and defendant’s relationship and defendant’s prior visits to Ms. Mayweather’s home. Specifically, Oliver claimed that on numerous occasions he would drive defendant to Ms. Mayweather’s house after her boyfriend went to work.- On cross-examina *1166 tion, however, both witnesses admitted that they were not present on July 3, 2009.
Lastly, defendant testified on his own behalf. In his testimony, defendant asserted that he had visited Ms. Mayweather’s home every day since his release from jail six weeks prior to the incident. He claimed that he and Ms. Mayweather were in a relationship for four years and that he would sneak into her home after her live-in boyfriend left for work. Defendant also claimed that when he arrived at Ms. May-weather’s home on July 3, the delivery men were at her house but they were still in the truck. He claimed that he knocked on the door and Ms. Mayweather’s ten1 year-old son let him in. During his testimony, defendant claimed that Ms. Mayweather’s ten-year-old son often let him in the house because Ms. Mayweather ‘“would be sleeping hard.” According to defendant, he wanted to talk to Ms. Mayweather about their two-year-old son.[1] He claimed that |4Ms. Mayweather only called the police because the neighbors might tell her live-in boyfriend of his presence and because the furniture people were present.
After considering the aforementioned testimony, the jury found defendant guilty of unauthorized entry of an inhabited dwelling.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541. U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.01/09/08), 974 So.2d 181, writ denied, 08-0499 (La.11/14/08), 996 So.2d 1086.
An appellate court’s authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation and does not extend to credibility determinations made by the trier of fact. La. Const. Art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.02/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913, cert. denied, — U.S. -, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La.App.2d Cir. 05/09/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529.
Unauthorized entry of an inhabited dwelling is defined by La. R.S. 14:62.3(A) as “the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person.” An unauthorized entry is an entry without consent, express or implied. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998). This consent must be given by a person with authority or capacity to consent. Id.
It is undisputed that defendant and Ms. Mayweather had an intimate relationship, and that defendant had permission to enter Ms. Mayweather’s home on prior oc *1167 casions. Permission to enter one day, however, does not give one carte blanche authorization to enter any time he wishes. See State v. Spain, 99-1956 (La.App. 4th Cir.03/15/00), 757 So.2d 879. It is Ms. Mayweather’s uncontradicted testimony that on the date of the incident she repeatedly denied defendant entry into her home and repeatedly asked him to leave her property. Nevertheless, defendant entered the home and forced his way into Ms. Mayweather’s bathroom while she was bathing. Regardless of whether defendant let himself in, or, as defendant testified, Ms. Mayweather’s ten-year-old son opened the door for him, it is clear that there was sufficient evidence for the jury to conclude that defendant entered Ms. Mayweather’s home on July 3, 2009, without the consent of a person with the authority and/or capacity to consent.
| rHearsay
On direct examination, defendant attempted to testify concerning statements made by Ms. Mayweather both before and during the incident charged. The state objected to all such testimony on the grounds of hearsay and relevance, and the trial court sustained the objections. Defendant now contends that he was prejudiced by the exclusion of this testimony since he was unable to show the full breadth of his relationship with Ms. May-weather.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. arts. 801(A)(1), 801(C). Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802. Basically, it is an out-of-court statement, that is, it is not from the witness presently testifying; and it is offered to prove a relevant issue in the case. Hearsay is excluded because of the inability of the. opponent to cross-examine. The out-of-court declarant, Ms. Mayweather, had already testified during the state’s case in-chief and was available to be recalled. What defendant was trying to attack was Ms. Mayweather’s credibility. This was not hearsay. Further, we note that a proper foundation was not laid for these allegedly impeaching remarks. See La. C.E. art. 801 D(l)(a).[2] We further recognize that | defendant was an undisciplined witness and despite objections was able to fully relate his view of his and Ms. Mayweather’s relationship, including that he was previously charged but acquitted of another unrelated unauthorized entering of a lady’s 'home and that Ms. Mayweather testified on his behalf at that trial. What was said during the course of the crime was res gestae and not hearsay. Defendant claimed that he entered Ms. May-weather’s bath to talk about having a father/son relationship with the two-year-old child. He told this to the jury several times. Whether Ms. Mayweather said yes or no is not significant. The most telling statement Ms. Mayweather made during the course of the crime was to call the police. If error, the sustaining of the hearsay objection was certainly harmless.

*1168
Excessive Sentence

In his final assignment of error, defendant argues that the trial court imposed an unconstitutionally excessive sentence. Defendant contends that the trial court failed to give adequate consideration to the mitigating circumstance that there was no physical injury to anyone as a result of his actions, that there were no sufficient aggravating circumstances to warrant the sentence, and, lastly, that under the facts of this case the sentence is grossly out of proportion to the severity of the crime. .
A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A trial court has wide discretion to sentence within the statutory limits. |RAbsent a showing of manifest abuse of that discretion, this court may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.05/16/00), 769 So.2d 1158; State v. James, 42,976 (La.App.2d Cir.02/13/08), 975 So.2d 801.
The penalty for unauthorized entry of an inhabited dwelling is from zero to six years with or without hard labor. La. R.S. 14:62.3. Under La. R.S. 15:529.1, if a defendant has previously been convicted of a felony and is subsequently convicted of a second felony he shall be punished as follows:
If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.
Therefore, as a second felony offender, Defendant had a sentencing exposure of 3 to 12 years.
The record reflects that the trial court addressed and considered the factors expressed in La. C. Cr. P. art. 894.1, including, specifically, the fact that defendant had a prior felony conviction for unauthorized entry of an inhabited dwelling, for which he was still on probation at the time of the instant offense. Additionally, the trial court noted that defendant’s criminal history also included charges for domestic abuse battery, enteringhremaining after being forbidden, negligent homicide, illegal use of a weapon from a motor vehicle, illegal use of a weapon during a crime of violence, disturbing the piece, and two stalking charges. Lastly, the trial court noted that defendant’s conduct in the instant case did not cause injury to anyone. |9Thus, considering defendant’s lengthy criminal history and the trial court’s wide discretion to impose a sentence within the statutory limits, we do not find defendant’s sentence to be unconstitutionally excessive.

Conclusion

For the foregoing reasons, the sentence and conviction of defendant are affirmed.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, PEATROSS and MOORE, JJ.
Rehearing denied.

. Whether defendant is the biological father of Ms. Mayweather’s two-year-old son was not proven. Defendant and Mr. Oliver testified that the two-year-old is defendant’s son; however, according to defendant’s testimony, Ms. Mayweather's other boyfriend signed the birth certificate.

. D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The de-clarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
(a) In a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness’ attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement.