JUDE G. GRAVOIS, Judge.
 

 |2The defendant, Torian Douglas, has appealed his conviction following a bench trial of unauthorized entry of an inhabited dwelling in violation of LSA-R.S. 14:62.3. For the reasons that follow, we affirm defendant’s conviction and sentence and remand for the limited purpose of correcting a minute entry.
 

 FACTS
 

 At trial, Erin French (“Ms. French”) testified that she “casually dated” defendant, but they were not in a long-term relationship. On July 3, 2005, she was living with her parents at 4020 Crossmoor Street in Marrero, Louisiana. Ms. French testified that defendant never lived at the Crossmoor Street residence and did not have a key to the residence.
 

 
 *574
 
 Sometime at the end of June 2005, Ms. French told defendant that she no longer wanted to see or talk to him. She explained that this was prompted when defendant purposefully answered a telephone call from a male business associate that was intended for her. Ms. French testified that defendant “went psycho on the | a guy” and punched the airbag on her car several times. Ms. French testified that afterwards she told defendant that she did not want to see him anymore, that she did not want him to call her anymore, and that she did not want him to visit her residence anymore. Nonetheless, defendant continued to call Ms. French.
 

 Ms. French further testified that on the night of July 2, 2005, defendant called and told her that he wanted to come visit her when he was on his break while working at a local Wal-Mart. Ms. French “basically told him no.” She was concerned because her parents were out of town and her German Shepherd was in the kennel.
 

 As Ms. French was returning home from work at approximately 2:00 a.m. on the morning of July 3, 2005, a neighbor invited her over, telling her that he had “some pizza and some friends over.” Ms. French proceeded home and at some point after she entered her house, defendant called her. She testified that she spoke to defendant “mainly just to say like please stop calling and then at one point, I just stopped answering.”
 

 At approximately 2:30 a.m. that same morning, someone knocked on the front door of Ms. French’s residence on Crossm-oor Street. After noticing that the peephole to the front door was covered up, Ms. French assumed that the person who had knocked on the door was her neighbor playing a joke on her. She explained that she opened the front door “enough to be able to see who it was.” At that point, defendant pushed the door in and forced his way into Ms. French’s home. Ms. French testified that defendant then grabbed her by the neck and punched her three times in the face.
 

 After the incident, defendant told Mrs. French that he was sorry. She testified that she asked defendant to leave, stating that she would not tell anyone about this incident. Defendant proceeded to leave. Ms. French then called a |4nearby friend and 911. Ms. French testified that she did not invite defendant into her residence and that defendant did not have permission to enter her residence on July 3, 2005.
 

 On cross-examination, Ms. French admitted that defendant had been to her home before and had met her parents. She was also questioned regarding a voluntary statement she made to the police after the attack. The statement indicates that Ms. French told a police officer “when I opened the door, [defendant] attacked me.” Ms. French responded that she did not tell the officer that she opened the door for defendant.
 

 Melissa French, Ms. French’s mother, testified that defendant never lived at the Crossmoor Street residence, that he did not have a key to the house, that he never spent the night at the house, and that he did not have her permission to enter the house. She also testified that her daughter dated defendant for approximately one month before the July 3, 2005 incident. She admitted that she had met defendant and that defendant had been in her house before. She was out of town at the time of the incident.
 

 Defendant testified that he met Ms. French in January of 2005 and they began dating shortly thereafter. According to defendant, he eventually moved into the Crossmoor Street residence with Ms. French. He further stated that he and Ms. French shared her key to the house.
 

 
 *575
 
 Defendant further testified that on the morning of July 3, 2005, he and Ms. French were still dating. He explained that he had previously heard “from a couple of friends that [Ms. French] was cheating or whatever.” Defendant testified that he called Ms. French and told her that he was going to visit her on his break, to which Ms. French replied “Okay.”
 

 | ¡¡According to defendant, when he arrived at the Crossmoor Street residence, Ms. French opened the door for him. He denied forcing his way in or covering the peephole. Defendant testified that after talking with Ms. French for 10 or 20 minutes, “her phone rung and it was the guy, I guess or whatever, and she didn’t want to answer the phone.” At that point, defendant began to pack up personal items that were present in Ms. French’s bedroom because he didn’t “want to be here anymore.” Defendant testified that Ms. French did not want him to leave and tried to stop him from leaving by grabbing and holding him back. Defendant admitted that at that point, he “swung to like, you know, like shoving her basically to get off of me and, you know, I hit her basically.”
 

 In finding defendant guilty at the conclusion of trial, the trial court stated:
 

 After listening to the testimony of the witnesses and reviewing the exhibits and also the law pertinent to the case, I find that it is a matter of determining the truth in the stories that have been presented to the court. Mr. Douglas testified that he had a long-standing relationship with the victim that lasted from January or February of 2005 until July and actually lived at the residence where the incident occurred. That testimony was not corroborated by any witnesses that support [sic] his version of that. On the other hand, Ms. French testified that they had a casual relationship and they dated a few times during the month prior to the incident and that he never resided there. Her testimony on those issues were [sic] corroborated by her mother.
 

 But the most compelling evidence that I thought the state presented to direct the court in determining who was telling the truth was the 911 tape when the statements made by the victim herself, most importantly the statement that my ex-boyfriend pushed the door in was made just about contemporaneously with the incident itself proves to the court that her version of the incident is the truthful version. Therefore, the court finds the defendant guilty of unauthorized use [sic] of an inhabited dwelling and the law provides that the unauthorized entry of an inhabited dwelling is the intentional entry by any person without authorization into any inhabited building or structure. The court finds that the evidence supports that’s exactly what Mr. Douglas did and, therefore, finds him guilty as charged.
 

 | fiAfter his motion for a new trial was denied, defendant was sentenced to two years imprisonment at hard labor.
 
 [1]
 
 This appeal followed.
 

 ASSIGNMENT OF ERROR NO. TWO
 

 The evidence was insufficient to uphold the conviction for unauthorized entry of an inhabited dwelling.
 

 [2]
 

 
 *576
 
 In this assignment of error, defendant argues that “he was allowed into [Ms. French’s] house, just as he had been allowed into her house in the past, and that an unauthorized entry was not in fact committed.”
 

 The constitutional standard for testing the sufficiency of the evidence, as enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
 

 Unauthorized entry of an inhabited dwelling is defined by LSA-R.S. 14:62.3(A) as the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person. An unauthorized entry is an entry without consent, express or implied.
 
 State v. Ortiz,
 
 96-1609 (La.10/21/97), 701 So.2d 922, 931,
 
 cert. denied,
 
 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998). In the case of a private residence, a person must have the consent of the occupant or an occupant’s agent to constitute a defense to unauthorized entry.
 
 Id.
 
 Unauthorized entry of an inhabited dwelling requires general intent.
 
 State ex rel.
 
 D.J., 00-1592 (La.App. 5 Cir. 3/28/01), 783 So.2d 558, 560-61. General criminal intent is present when the circumstances indicate that the offender “in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act.” LSA-R.S. 14:10(2).
 

 In
 
 State v. Gandy,
 
 45,947 (La.App. 2 Cir. 2/2/11), 57 So.3d 1163, the defendant was charged with and convicted of unauthorized entry of an inhabited dwelling. The charge against the defendant stemmed from an incident in which the defendant entered the home of his former girlfriend without consent.
 
 Id.
 
 at 1164-65. At trial, the victim testified that the defendant was a former boyfriend and that the defendant “stalked” her and called her constantly after their relationship ended. The defendant testified on his own behalf.
 
 Id.
 
 at 1165. The defendant asserted that he had visited the victim’s home every day since his release from jail six weeks prior to the incident. He claimed that he and the victim were in a relationship for four years and that he would sneak into her home after her live-in boyfriend left for work.
 
 Id.
 
 On appeal, the defendant contented that the evidence used to convict him was insufficient. The second circuit disagreed, reasoning:
 

 It is undisputed that defendant and [the victim] had an intimate relationship, and that defendant had permission to enter [the victim’s] home on prior occasions. Permission to enter one day, however, does not give one carte blanche authorization to enter any time he wishes. It is [the victim’s] uncontradicted testimony that on the date of the incident she repeatedly denied defendant entry into her home and repeatedly asked him to leave her property. Nevertheless, defendant entered the home and forced his way into [the victim’s] bathroom while she was bathing. Regardless of whether defendant let himself in, or, as defendant testified, [the victim’s] ten-year-old son opened the door for him, it is clear that there was sufficient evidence for the jury to conclude that defendant entered [the victim’s] home on July 3, 2009, with
 
 *577
 
 out the consent of a person with the authority and/or capacity to consent.
 

 Id.
 
 at 1166-67 (citations omitted).
 

 In
 
 State v. Armstrong,
 
 99-925 (La.App. 5 Cir. 2/16/00), 756 So.2d 533,
 
 writ denied,
 
 00-2419 (La.6/1/01), 793 So.2d 182,
 
 cert. denied,
 
 534 U.S. 1058, 122 S.Ct. 651, 151 L.Ed.2d 568 (2001), the defendant had entered the victims’ residence with permission in the past, but forced his way into the residence on the night in question, according to the State’s witnesses. This Court found the evidence sufficient to convict the defendant of intentional entry of the home without authorization.
 
 Id.
 

 Similarly, in this case, Ms. French testified that she “casually dated” defendant. She further testified that she terminated their relationship and that thereafter defendant continued to call and harass her. According to Ms. French, defendant called her in the early morning hours of July 3, 2005 and asked to see her, a request Ms. French declined. Ms. French then testified that she responded to a knock on her front door by opening the door slightly to see who was outside. At that point, defendant pushed the door in, forcing his way into her home. Melissa French, Ms. French’s mother, testified that defendant never lived at her home, did not have a key to the house, never spent the night at the house, and did not have her permission to enter the house. She also corroborated her daughter’s testimony that her daughter and defendant dated for approximately one month. The trial court also noted that the 911 tape weighed heavily in his decision. The tape was made shortly before 3:00 a.m. on the morning of July 3, 2005. In the tape, an obviously very upset Ms. French told the 911 dispatcher that defendant pushed her door in.
 

 On the other hand, defendant testified that Ms. French let him into the residence willingly, after which they began to talk. According to defendant, when he began to leave, Ms. French tried to stop him. Defendant further testified that he struck Ms. French to get her “off of him.”
 

 18It is obvious from the reasons given by the trial court that the trial court found Ms. French’s testimony more credible than that of defendant.
 

 The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness.
 
 State v. Rowan,
 
 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency.
 
 State v. White,
 
 472 So.2d 130, 132 (La.App. 5 Cir. 1985). The credibility of witnesses will not be reweighed on appeal.
 
 Rowan,
 
 694 So.2d at 1056. “[T]he
 
 Jackson
 
 standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the fact finder at trial.”
 
 State v. Juluke,
 
 98-341 (La.1/8/99), 725 So.2d 1291, 1293 (per curiam) (citation omitted).
 

 The State presented evidence that defendant forced his way into Ms. French’s home. Thus, viewing the evidence in the light most favorably to the prosecution, we find the evidence was sufficient under the
 
 Jackson
 
 standard to support the conviction of unauthorized entry of an inhabited dwelling.
 

 This assignment of error is without merit.
 

 ASSIGNMENT OF ERROR NO. ONE
 

 The trial court erred in allowing the admission of the facts of the simple battery to be used as evidence of unauthorized entry of an inhabited dwelling against Mr. Douglas.
 

 
 *578
 
 Defendant next argues that the trial court erred in holding that the evidence of the battery on Ms. French was admissible at trial. Defendant complains that none of the factors listed in Louisiana Code of Evidence art. 404(B) apply to this case, and that the evidence was unduly prejudicial. Defendant additionally | incomplains that “[i]n ruling on the other crimes evidence issue, the trial judge did not state which factor provided the basis for the admission of the evidence, seeming to fall in line with the State’s written motion that it was relevant as
 
 res gestae.”
 
 We find no merit to this argument.
 

 Evidence of other crimes or bad acts committed by a criminal defendant is generally not admissible at trial.
 
 State v. Prieur,
 
 277 So.2d 126, 128 (La.1973). Louisiana Code of Evidence art. 404(B)(1) provides, however, that:
 

 [e]xcept as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
 

 Evidence that constitutes an integral part of the crime, formerly known as
 
 “res gestae,”
 
 is admissible without any pri- or notice to the defense.
 
 State v. Charles,
 
 00-1586 (La.App. 5 Cir. 6/27/01), 790 So.2d 705, 708. A close connexity is required between the charged and uncharged conduct to assure that the purpose served by admission of the other crimes evidence is to complete the story of the crime on trial by proving its immediate context of happenings near in time and place, rather than to depict the defendant as a bad person.
 
 Id.
 
 As recognized by this Court,
 

 [t]he test for integral act
 
 (res
 
 gestae) evidence is, therefore, not simply whether the State might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive the State’s case of narrative momentum and cohesiveness, “with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.”
 

 State v. Rhea,
 
 03-1273 (La.App. 5 Cir. 2/23/04), 868 So.2d 863, 867 (quoting
 
 Old Chief v. United States,
 
 519 U.S. 172, 187, 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997)).
 

 The defendant bears the burden to show that he was prejudiced by the admission of other crimes evidence.
 
 State v. Dauzart,
 
 02-1187 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 165-166. Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence pursuant to LSA-C.E. art. 404(B)(1) will not be disturbed.
 
 State v. Merritt,
 
 04-204 (La.App. 5 Cir. 6/29/04), 877 So.2d 1079, 1085,
 
 writ denied,
 
 04-1849 (La.11/24/04), 888 So.2d 228.
 

 The facts of this case are similar to
 
 Gandy, supra.
 
 On appeal in that case, the defendant attempted to testify concerning statements made by the victim both before and during the incident charged, but the State successfully objected. The second circuit held that “[w]hat was said during the course of the crime was
 
 res gestae
 
 and not hearsay.”
 
 Gandy,
 
 57 So.3d at 1167.
 

 
 *579
 
 In
 
 State v. Parent,
 
 02-835 (La.App. 5 Cir. 12/30/02), 836 So.2d 494,
 
 writ denied,
 
 03-0491 (La.10/31/03), 857 So.2d 472, the defendant was charged with unauthorized entry of an inhabited dwelling, unauthorized use of a motor vehicle, simple burglary, extortion and three counts of intimidating a witness. Finding no error in the trial court’s denial of the defendant’s motion to sever the offenses, this Court explained,
 

 [t]he seven charges were all part of the same course of conduct. Even if the trial court had allowed severance of the counts in the manner in which defendant suggests, evidence of the burglary, unauthorized entry, and unauthorized use of a motor vehicle would have been admissible as integral parts of the charges of extortion and intimidating a witness.
 

 Id.
 
 at 507.
 

 In
 
 State v. Willis,
 
 510 So.2d 411 (La.App. 2 Cir.1987),
 
 writ denied,
 
 534 So.2d 440 (La.1988), the defendant was convicted by a jury of unauthorized entry of an inhabited dwelling. At trial, it was determined that the defendant gained | ^unauthorized entrance to a private residence by climbing through a kitchen window. This individual proceeded to a bedroom where a 14-year-old girl was asleep in her bed. The defendant pulled the bed sheets down from around the girl and began to pull her night gown up when she awoke and started screaming for her brother who was asleep in an adjoining room. The brother’s response caused the intruder to bolt toward the front of the house and escape through the opened window in the kitchen.
 
 Id.
 
 at 413.
 

 On appeal, the defendant contended that the trial court erred in denying his motion for mistrial. Specifically, the defendant contended that the trial court erred based upon comments in the prosecutor’s opening statement wherein the prosecutor stated that the defendant there “went into [the 14-year-old girl’s] room, lifted up her gown, she screamed, he left.”
 
 Id.
 
 at 413-14. The second circuit determined “that the trial court was correct in denying the motion for a mistrial” because “[i]t is evident from the record that the asserted conduct, in proceeding to the bedroom and lifting the gown of the girl after illegally entering the dwelling, is so closely entwined in the conduct charged that it must be construed as a necessary incident of the criminal act.”
 
 Id.
 
 at 414.
 

 In this case, Ms. French testified that defendant forced his way into her home and immediately began to attack her. Thus, based on the above jurisprudence, the testimony regarding defendant’s conduct in striking Ms. French was so closely entwined in the unauthorized entry charge that it was properly admitted at trial as evidence that constitutes an integral part of the crime, formerly known as
 
 “res ges-tae.”
 
 This assignment of error is thus without merit.
 

 I,
 
 ¿ERRORS PATENT DISCUSSION
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975); and
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990).
 

 A review of the transcript reflects that defendant was not advised of the time delay within which to file an application for post-conviction relief. Although the commitment reflects that defendant was correctly informed, the trial transcript only states that the trial court sentenced defendant to a term of imprisonment of two years at hard labor. Where the transcript and the minute entry conflict, the transcript governs.
 
 State v. Jarrow,
 
 08-743 (La.App. 5 Cir. 2/25/09), 9 So.3d 905, 910;
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983). Accordingly, this mat
 
 *580
 
 ter is remanded to the district court which is ordered to amend the commitment to conform to the transcript.
 

 Further, we hereby advise defendant that, pursuant to LSA-C.Cr.P. art. 930.8, no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of LSA-C.Cr.P. art. 914 or 922.
 
 See, State v. Davenport,
 
 08-463, p. 11 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 457,
 
 writ denied,
 
 09-0158 (La.10/16/09), 19 So.3d 473.
 

 CONCLUSION
 

 For the foregoing reasons, defendant’s conviction and sentence are affirmed. This matter is remanded to the trial court for the limited purpose of correcting the minute entry to conform' with the transcript as ordered above..
 

 CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS
 

 . When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary.
 
 State v. Hearold,
 
 603 So.2d 731, 734 (La.1992). We will
 
 *576
 
 therefore address sufficiency of the evidence first.
 

 [1]
 

 . A multiple bill of information was filed against defendant but those proceedings are not part of this appeal.