WILLIAMS, J.
pThe defendant, Annternette Denise Lattin, was charged by bill of information with home invasion, in violation of La. R.S. 14:62.8. Following a jury trial, she was found guilty of the responsive verdict of unauthorized entry of an inhabited dwelling, a violation of La. R.S. 14:62.3. The trial court sentenced the defendant to serve one year in prison at hard labor. The sentence was suspended, and she was placed on supervised probation for a period of one year. Additionally, the court ordered the defendant to pay court costs or serve 30 days in the parish jail in lieu of payment. For the following reasons, we affirm the defendant’s conviction. We vacate the defendant’s sentence and remand this matter to the trial court with instructions.
FACTS
The'defendant, Annternette Lattin, and James Leachman were involved in a relationship, which resulted in the birth of “Frank.”[1] The defendant and Leachman ended their relationship soon after Frank was born.
The events thereafter became a matter of dispute during the trial. It is undisputed that neither Leachman nor the defendant had a court order with regard to the custody of Frank. Leachman testified that the defendant relinquished custody of Frank to him when Frank was two months old and the child has lived with him since that time.[2] Conversely, the defendant 12testified that she has lived “back and forth” between Shreveport and Memphis, Tennessee, for most of her life. She maintained that despite her living arrangement, she never relinquished custody of Frank. She stated that she and Leachman entered into an informal custody agreement, whereby she would have physical custody of Frank during the school year, and Leachman would have physical custody of the child during the summer months. The defendant testified that Frank visited Leachman during the summer of “2013 or 2014”; there *513 after, Leachman refused to return him to her custody.
On November 26, 2014, the defendant and her sister, Kenya Houston, went to Leachman’s apartment and asked to visit Frank. Leachman shared the apartment with his girlfriend, Miriam Victoria Ochoa, Frank, and the three-year-old daughter Leachman shared with Ochoa.
When the defendant and Houston arrived at the apartment, Leachman answered the door and allowed Frank to visit with them on the “porch” of the apartment. Meanwhile, Ochoa took her daughter to a bedroom located in the rear of the apartment.
Leachman testified as follows: when the defendant arrived, Frank appeared nervous and stated to him, “[D]on’t leave me[;] just watch”; the defendant knelt down to hug Frank; he heard the defendant say, “I should just take him”; the defendant picked Frank up and attempted to “break and run with him”; he “grabbed” Frank to prevent the defendant from fleeing with him; Houston “jumped in” and a struggle ensued between Leach-man, the defendant and Houston; he managed to pull Frank from the defendant’s lagrasp; he pushed Frank into the apartment; the defendant called an unidentified man for assistance; before the man reached the front porch, he (Leachman) hurried inside the apartment and shut the door; the defendant, Houston and the unidentified man forcibly opened the door and entered the apartment; Frank retreated to a back bedroom where Ochoa and her daughter were located; an altercation ensued between him, the defendant, Houston and the unidentified man; the defendant, Houston and the unidentified man attempted to walk toward the back bedroom where Frank had gone; he attempted to block their path; the defendant, Houston and the man began “punching and scratching” him; the defendant, Houston and the man reached the back bedroom where Ochoa and the children were located; he “tried to fight them off’; the defendant, Houston and the man opened the bedroom door, grabbed Ochoa by her hair and “started yanking on her head” in an attempt to pull her out of the bedroom; “an all-out battle royal” ensued; “everybody” began to “tussle”; Ochoa fled the bedroom with her daughter; the defendant, Houston and the man attacked him as he held Frank; he managed to shield Frank from most of the blows; during the struggle, the defendant grabbled his testicles and pulled them; the defendant also grabbed Frank’s neck and began “twisting it”; the defendant stopped twisting Frank’s neck after he (Leachman) warned her that she could “break it”; the male accomplice told him “Just let [Frank] go, man. Just let him go”; he refused to let go of Frank; the altercation continued until police officers arrived;[3] by the time the police officers arrived, his apartment looked “like a tornado |4came through it”; he did not give the defendant, Houston or the man consent to enter the apartment; and he, Ochoa and Frank sustained several injuries during the incident.
During his direct testimony, Leachman identified photographs taken on the night of the incident. The photographs were admitted into evidence and shown to the jury.[4] On cross-examination, Leachman admitted that although Frank lived with him, *514 he did not have a court order granting him full custody of. the child. He testified that he filed a petition for sole custody of the child after the incident in question;, the petition was pending at the time of trial.
Miriam Ochoa testified as follows: she and -Leachman were in their apartment when they heard a knock at the door; when she saw that the defendant was at the door, she took her daughter into the bedroom; soon thereafter, she heard “a lot of yelling and screaming”; she left the bedroom and walked toward the front door; she- saw the defendant “and two other people” trying to force their way through the door; Leachman tried to push Prank inside the apartment; she attempted to “hold the door” to. prevent the defendant and the others from entering the apartment; the defendant and the others forced their way inside the apartment; she “grabbed the two kids and ran to the bedroom”; the bedroom door did not have a lock, so she attempted to hold the door to prevent the defendant and the others from entering the bedroom; “someone” reached inside a crack in the bedroom door, grabbed her by her hair and, began pulling her .hair; the group gained entry into the |fibedroom and the altercation between Leachman, the defendant, Houston and the man continued; she took her daughter and escaped from the apartment; she “started calling the police”; the apartment manager had already called the police department; and when the police officer arrived, she directed him to the apartment.
Corporal Phillip Tucker was on patrol that night for the Shreveport Police Department. Cpl. Tucker testified as follows: on November 26, 2014, he was dispatched to Leachman’s apartment in response to a 911 call; he arrived at the apartment complex and observed Ochoa flagging down his patrol car; he went inside the apartment and. saw Houston standing in the hallway leading to the bedroom, the defendant sitting on the bedroom floor and Leachman sitting on the edge of the bed; the unidentified man was not in the apartment when he. arrived; he observed that Leachman and the defendant appeared to be “physically exhausted” and “appeared to have been in a physical altercation”; he followed police protocol by' separating the individuals and interviewing them separately; when he completed his questioning, he took photographs of the apartment, Leachman, Ochoa and Frank; and he arrested the defendant and Houston.
The defendant testified as follows: she and Leachman shared custody of Frank until she moved to Memphis;[5] neither she nor Leachman had “legal custody” of Frank; she and Leachman agreed that Frank would live with her during the school year and with Leachman during the summer months; in 2013 or 2014, Leach-man refused to return Frank to her custody and she was 16unable to locate them for a period of time because Leachman had changed his address and telephone number;[6] she did not learn the whereabouts of Leachman and Frank until “the day before” the incident in question; on November 26, 2014, she went to Leachman’s apartment to pick up Frank; she and Leachman had agreed that Frank would *515 spend Thanksgiving with her; Houston and her minor children accompanied her to the apartment; the children remained in the car during the incident; after talking to Frank for a while, she picked him up and “proceeded to walk away”; Leachman refused to allow Frank to leave with her; she and Leachman had a “tug-of-war” over Frank; she did not go to Leachman’s apartment for the purpose of using force or violence against anyone; when, she arrived at the apartment, Leachman answered the door and allowed her to see Frank “in the breezeway part by the door” of his apartment; Frank told her that he missed her and asked her when would he see his grandmother and cousins; Frank was happy to see her; she attempted to walk away with Frank because she “was just needing to walk off with him”; when she attempted to walk away, Leachman “grabbed [her] by [her] neck”; he pulled her back towards the apartment to prevent her from getting into the car with Frank; Ochoa and Houston began “tussling with each other”; both she and Leachman were pulling Frank in different directions; she did not pull Frank’s neck and she does not know how he sustained an injury to his head; she did not pull Leachman’s testicles; she did not pull Ochoa’s hair; she sustained some scratches and her dress “was ripped off’ during the altercation; she traveled 17from Memphis to Shreveport to “locate and get [her] baby”; her brother came to the apartment to pick up Houston’s children after they were arrested;[7] she does not recall seeing the unidentified man described by Leachman and Ochoa; and she entered Leachman’s apartment “by force” because he pulled her into the apartment during the struggle.
After hearing the testimony and reviewing the evidence, the jury found the defendant guilty of the responsive verdict of unauthorized entry of an inhabited dwelling, in violation of La. R.S. 14:62.3. The defendant was sentenced to serve one year in prison at hard labor. The trial court stated that the; defendant’s sentence would be suspended;, thereafter, he stated that the sentence would be “deferred.” The defendant was placed on supervised probation for a period of one year. Subsequently, the trial court denied the defendant’s motion for post-verdict judgment of acquittal.
The defendant appeals. -
DISCUSSION
The defendant contends the evidence was insufficient, to support her conviction for unauthorized entry of' an inhabited dwelling. She argues that she was involuntarily pulled into Leachman’s apartment and did not enter without permission.
The standard of review of a sufficiency of the evidence claim is whether, after viewing the evidence in the. light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 660 (1979); State v. Tate, 2001-1658 (La. 5/20/03), 851 So.2d 921, cert denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La. 2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App. 2 Cir. *516 1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La. 11/6/09), 21 So.3d 297.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence, and inferred from the circumstances established by that evidence, must be sufficient for a rational trier of fact to conclude, beyond a reasonable doubt, that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Speed, 43, 786 (La.App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La. 11/6/09), 21 So.3d 299; State v. Parker, 42,311 (La. App. 2 Cir. 8/15/07), 963 So.2d 497.
Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Broome, 49, 004 (La.App. 2 Cir. 4/9/14), 136 So.3d 979, writ denied, 2014-0990 (La. 1/16/15), 157 So.3d 1127. If a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; State v. Broome, supra; State v. Gipson, 45,121 9(La.App. 2 Cir. 4/14/10), 34 So.3d 1090, writ denied, 2010-1019 (La. 11/24/10), 50 So.3d 827.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App. 2 Cir. 2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La. 12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La. App. 2 Cir. 5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La. 12/14/07), 970 So.2d 529.
It is the province of the jury to resolve conflicting inferences from the evidence. State v. Johnson, 38,927 (La.App. 2 Cir. 11/23/04), 887 So.2d 751; State v. Mickens, 31,737 (La.App. 2 Cir. 3/31/99), 731 So.2d 463. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, the testimony of one witness—if believed by the trier of fact—is sufficient to support a requisite factual conclusion. State v. Jones, 34,863 (La.App. 2 Cir. 8/22/01), 794 So.2d 107. Such testimony alone is sufficient, even where the state does not introduce medical, scientific or physical evidence. State v. Mickens, supra.
La. R.S. 14:62.3(A) defines the unauthorized entry of an inhabited dwelling as follows:
[T]he intentional entry by the person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person.
Under this statute, an unauthorized entry is an entry without consent, express or implied. State v. Ortiz, 96-1609 (La. 10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. 10Gandy, 45,947 (La.App. 2 Cir. 2/2/11), 57 So.3d 1163. This consent must be given by a person with authority or capacity to consent. State v. Gandy, supra.
In the instant case, it is undisputed that the defendant entered Leachman’s apartment, an inhabited dwelling used in whole or in part as a home or place of abode. The primary fact in dispute is whether the defendant intentionally entered the residence without authorization.
*517 Unauthorized entry of an inhabited dwelling requires general intent. State v. Besse, 2011-230 (La.App. 5th Cir. 12/28/11), 83 So.3d 257, writ denied, 2012-0292 (La. 5/25/12), 90 So.3d 409; State v. Douglas, 2011-7 (La.App. 5th Cir. 11/15/11), 80 So.3d 571. General intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his or her act. La. R.S. 14:10(2); State v. Williams, 49,249 (La.App. 2 Cir. 10/1/14), 149 So.3d 462, writ denied, 2014-2130 (La. 5/22/15), 173 So.3d 1167.
In the instant case, Leachman and Ochoa testified that the defendant, Houston and an unidentified man forcibly entered their apartment without their authorization. Leachman testified that he attempted to barricade the door with his body, as the defendant and her accomplices physically forced their way into the apartment. That testimony was corroborated by Ochoa, who testified that she attempted to “hold the door” to prevent the defendant and her accomplices from entering.
The argument urged by the defendant regards a credibility determination by the jury. It is evident from the verdict that the jury believed and found credible the testimony of Leachman and Ochoa. The Intestimony was sufficient to establish that the defendant intentionally entered an inhabited dwelling without authorization. Accordingly, -viewed in the light most favorable to the prosecution, the evidence in this record is clearly sufficient to prove beyond a reasonable doubt that the defendant committed the crime of unauthorized entry of an inhabited dwelling. This argument is without merit.
ERROR PATENT
In accordance with La. C.Cr.P. art. 920, this Court has thoroughly reviewed this record for errors patent. We have found two errors patent in the sentencing proceedings.
At sentencing, the trial court sentenced the defendant under the provisions of La. C.Cr.P. art. 893. Specifically, the court stated: •
The Court agrees to defer sentencing in accordance with [La. R.S. 14:62.3 and] Article 893 of the Code of Criminal Procedure.
For the record, the agreed sentence is one year at hard labor suspended, one year active supervised probation. The Court so places you on one year active supervised probation with the Louisiana Department of Probation and Parole[.]
[[Image here]]
[I]t’s not an agreed sentence so I have to advise her of the appeal rights *** even though it’s a deferred sentence.
(Emphasis added).[8]
| ^Pursuant to Article 893, the trial court has the discretion to either defer or suspend a defendant’s sentence. However, it is unclear from this record whether the trial court intended to defer or suspend the defendant’s sentence. As noted above, *518 in sentencing the defendant, the court used the terms “suspended” and “deferred” interchangeably, thus, creating an indeterminate sentence. Accordingly, we hereby vacate the defendant’s sentence and remand this matter to the trial court for resentenc-ing. We also instruct the trial court to amend the court minutes to reflect the new sentence. .
Additionally, the trial court erroneously ordered the defendant to pay court costs or serve 30 days in the parish jail in lieu of payment. An indigent, defendant cannot be subjected to default jail time in lieu of the payment of a fíne, costs or restitution. State v. Lewis, 48,373 (La.App. 2 Cir. 9/25/13), 125 So.3d 482; State v. Mack, 30,832 (La.App. 2 Cir. 6/24/98), 716 So.2d 126. A defendant’s claim of indigence in such a situation may be discerned from the record. Where a defendant is represented at trial by the indigent defender’s office, or on appeal by the Louisiana Appellate Project, this Court has considered it error for a trial court to impose jail time for failure to pay court costs. State v. Lewis, supra.
In the instant case, the defendant’s indigent status has been shown by her representation at trial by the, indigent defender’s office and her current representation on appeal by the Louisiana Appellate Project. Thus, the imposition of default jail time by the trial court was in error. Accordingly, we hereby instruct the trial court to delete that portion of the defendant’s sentence that includes default jail time for failure to pay court costs.
^CONCLUSION
For the above reasons, the defendant’s conviction is affirmed. We vacate the defendant’s sentence and'remand this matter to the trial court for resentencing with instructions.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED WITH INSTRUCTIONS FOR RESEN-TENCING.

. Frank’s date of birth is February 26, 2010.

. Leachman testified that when Frank was approximately two months old, he received a telephone call from the defendant, who threatened to “throw [Frank] in the trash." He stated that he left work and picked Frank up; Frank has lived with him ever since that incident. Leachman also testified that on one occasion, the defendant picked up Frank from his home under the guise of taking the child to a local park. Instead, the defendant took the child to Memphis, Tennessee. At some point, Leachman regained custody of Frank.
The defendant denied threatening to throw Frank into the trash and she denied ever taking Frank to Memphis without Leachman’s knowledge.

. Ochoa witnessed the unidentified man fleeing shortly before the police officers arrived.

. The photographs depict the condition of the apartment after the altercation and the injuries sustained by Leachman, Ochoa and Frank. Some of the photographs were taken by police officers; others were taken by either Leachman or Ochoa.

. It is not clear from the record when the defendant “moved to Memphis." She testified that she has spent her life moving back and forth between Shreveport and Memphis.

. The'defendant testified that she contacted the Shreveport Police Department “several times” to assist her in regaining custody of Frank. According to the defendant, she was told that the police department could not assist her because Leachman had not taken Frank out of the state.

. It is unclear from this record whether the defendant’s brother was -the unidentified man described by Leachman and Ochoa.

. The court minutes from the date of sentencing provide:
*** THE defendant WAS SENTENCED UNDER THE PROVISIONS OF ARTICLE 893 OF THE CODE OF CRIMINAL PROCEDURE *** TO BE CONFINED AT HARD LABOR FOR A PERIOD OF ONE (1) YEAR AND COMMITTED TO THE LOUISIANA DEPARTMENT OF CORRECTIONS[.] THE COURT ORDERED THE JAIL SENTENCE TO BE SUSPENDED AND THE DEFENDANT PLACED ON SUPERVISED PROBATION FOR A PERIOD OF ONE (1) YEAR[.]
(Emphasis added).